UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GEORGE W. BLAKELY | CIVIL ACTION |
| VERSUS | NO: 14-1393 |
| NESTLE WATERS NORTH AMERICA, INC. | SECTION: "A" (3) |

### ORDER & REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 22)** filed by defendant Nestle Waters North America, Inc. Plaintiff George Blakely, *pro se*, has not filed an opposition to this motion. The motion is before the Court on the briefs without oral argument.

### I. BACKGROUND

Plaintiff George Blakely filed this action *pro se* under the Americans with Disabilities Act ("ADA") alleging via his Amended Complaint that Defendant discriminated against him by failing to provide reasonable accommodations for his disability and retaliated against him by terminating him.

Plaintiff was employed by Defendant, Nestle Waters North America, Inc. As a result of conditions at a store for which Plaintiff had responsibility, Defendant placed Plaintiff on a 90 day "Performance Improvement Plan" ("PIP") on October 30, 2012. Plaintiff alleges that the PIP contained both untrue statements regarding him and unrealistic goals regarding his work assignments. Shortly thereafter, due to the PIP and ongoing working conditions, Plaintiff alleges that around November 5, 2012 he had to take a vacation during which Plaintiff wrote an appeal to Defendant asking to be taken off of the PIP due to the unrealistic goals. He also scheduled an appointment with his primary care doctor for mental health issues. A few days later he submitted a written appeal asking again to be taken off of the PIP.

Plaintiff also argues that he received a disparaging email in derogation of company policy from a supervisor on November 27, 2012 in response to Plaintiff's attempt to figure out the meaning of certain job-related terminology.[1]  Plaintiff reported this email to the human resources department at Defendant's offices on November 29, 2012.

That same day, Plaintiff was "diagnosed with mild depression, stress anxiety disorder and ADD" and was prescribed "10mg of Lexapro and 10mg of Adderall."  He reported this diagnosis verbally via telephone conference with Defendant's human resources department in addition to submitting the doctor's note.  Plaintiff also again discussed the disparaging email.

On December 4, 2012, Plaintiff had a telephone call with the human resources manager and district manager to discuss the "unrealistic goals" in the PIP, "the sneakiness of the emails," and the resulting headaches, sleep issues, difficulty concentrating at work, and the doctor's diagnosis.  Plaintiff claims that the human resources manager then asked him if he was trying to file a worker's compensation claim.  Plaintiff alleges that following this conference, Defendant removed some of the untrue statements from the PIP but did not change the unrealistic goals.

Following another doctor's appointment in late January 2013, Plaintiff had another phone call with his supervisors.  Plaintiff alleges that during this call he requested an accommodation in the form of having extra time to achieve the goals of the 90 day PIP, his "probationary period."  Plaintiff also reported to his supervisors during this meeting that he was "doing a lot better with my depression, I am able to focus on what I have to do and the

---

[1] Plaintiff claims that he emailed a manager to ask the meaning of a term used during a weekly sales meeting.  During this email conversation, Plaintiff received an email from another manager that said "SHOOT ME."  Plaintiff alleges that it then became apparent to him that the two managers were trying to engage in a separate conversation about him, had accidentally sent that email to him, and were calling him "stupid, dumb, or ignorant."

doctor wanted to know if you could give me some extra time on my probation." After numerous communications over the next several days concerning what sales numbers to use to estimate time Plaintiff would need to achieve his goals, Plaintiff was informed on February 5, 2013 for the first time that he had been granted a three-day extension but that the PIP had already expired as of February 3, 2013. On February 13, 2013, Defendant terminated Plaintiff from his position for "performance issues."

Plaintiff filed his original Complaint on June 14, 2014. Defendant moved to dismiss the Complaint on August 8, 2014. In its Order of December 1, 2014 (Rec. Doc. 20), this Court found that the original Complaint included neither "information of a specific accommodation sought nor is any accommodation linked to a limitation arising from these disabilities." (Rec. Doc. 20; Order at 5). However, as Plaintiff is proceeding *pro se*, the Court gave leave for Plaintiff to amend his Complaint. Plaintiff filed his Amended Complaint on December 29, 2014, and Defendant subsequently filed this renewed motion to dismiss, set for submission on January 28, 2015.

Plaintiff seeks injunctions restraining Defendant "from engaging in employment practices which discriminate on the basis of disability" and "from engaging in retaliation against employees who make good-faith complaints of employer verbal language that makes employees uncomfortable." Plaintiff also seeks compensatory and punitive damages. Via the instant motion the Defendant seeks to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6).

## II.  STANDARD of REVIEW

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues &*

*Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

The Court also recognizes that *pro se* pleadings must be given the benefit of liberal construction. *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991).

### III.  DISCUSSION

Defendant presents two arguments in its renewed motion to dismiss. Defendant argues that the Amended Complaint should be dismissed in its entirety for failure to exhaust administrative remedies, and, in the alternative, that the Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

Defendant contends that Plaintiff failed to exhaust his administrative remedies as to

4

both of his claims.  More specifically, Defendant argues that neither claim in the Amended Complaint (failure to provide a reasonable accommodation or retaliation) could be reasonably expected to grow out of the factual allegations in the charge of discrimination submitted by Plaintiff.  The EEOC charge in this case filed by Plaintiff reads as follows:

> On October 30, 2012, I was placed on a 90-day Performance Improvement Plan (PIP).  I was discharged from my Retail Service Representative position effective February 13, 2012.  I had been employed by this company since April 2010.
>
> I was placed on a PIP and discharged allegedly for performance issues.
>
> I believe that I was discharged because of my disabilities and in retaliation for reporting a remark made by my supervisor in an email that I perceived to be offensive in violation of the Americans with Disabilities Act.  The PIP consisted of lies about my performance and unrealistic goals and, although I met some of the goals, I was discharged anyway.

(Rec. Doc. 22-1; EEOC Charge of Discrim.).[2]

Pointing to the language of the charge, Defendant contends that the lack of factual allegations as to any accommodation request or its denial is fatal to the complaint. Defendant also contends that the retaliation allegations in the charge speak to the email about business terminology, and only now in the Amended Complaint does Plaintiff claim that the retaliation actually stemmed from an alleged accommodation request made two months after that email.

This Court agrees with Defendant's argument that the claims raised in the Amended

---

[2] The Court may take judicial notice of the EEOC charge in this case, attached as Exhibit 1 to Defendant's renewed motion to dismiss, as "a matter of public record directly relevant to the issue at hand."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (finding that the district court did not abuse its discretion in taking judicial notice of documents publicly available with the FDA); *Chadwick v. Layrisson*, no. 98-3518, 1999 WL 717628 (E.D. La. Sept. 13, 1999) (taking judicial notice of an EEOC charge as a matter of public record).  The authenticity of this document or its contents are not in dispute.  FED. R. EVID. 201 (outlining the requirements prior to taking judicial notice).

Complaint cannot be reasonably expected to arise out of the factual allegations contained in the EEOC charge.  Prior to filing a lawsuit in a civil action bringing a claim under the Americans with Disabilities Act, a plaintiff must timely file a charge of discrimination with the EEOC.  Further, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."  *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008).  Nevertheless, the scope of EEOC exhaustion is not limited to the four corners of the EEOC charge but also to those matters "which can reasonably be expected to grow out of the charge of discrimination."  *Id.* (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d at 466 (5th Cir. 1970)).  This liberality is "designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship."  *Id.* at 273 (citing *Sanchez*, 431 F.2d at 465).  When considering what an EEOC investigation growing out of a particular EEOC charge would reasonably encompass, the "crucial element" to consider is "the factual statement contained therein."  *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 879 (5th Cir. 2003), *quoting Sanchez*, 431 F.2d at 462.[3]

Even construing the scope of the charge liberally, Plaintiff makes no mention of any request for accommodation.  While Plaintiff is not required to use any such exact terminology in the charge, the charge does not speak to any of the factual circumstances related to his alleged accommodation request – an extension of time to complete the tasks discussed with his supervisors.  Similarly, the mention of retaliation in the EEOC charge speaks about an email further described by Plaintiff in his Amended Complaint.  *See*

---

[3] While the standards referenced here are contained in Title VII cases, the administrative requirements for ADA claims are the same.  *See, e.g., Franklin v. City of Slidell*, no. 12-1940, 936 F. Supp. 2d 691, 709-10 (E.D. La. March 27, 2013).

6

"Background," *supra*.  Although the manager's remark is certainly an offensive remark under Plaintiff's recounting of events, Plaintiff does not allege anywhere in his complaint that this remark was related to any disability from which he suffered.  Nor does this email otherwise constitute a cognizable claim by itself.

Therefore, Plaintiff's claim must be dismissed.  Defendant has correctly identified the jurisprudential gap as to whether a dismissal for failure to exhaust administrative remedies should be considered as a dismissal under 12(b)(1), and thus done without prejudice, or under 12(b)(6), and thus done with prejudice.  *See, e.g.*, *Firmin v. Richard Constr., Inc.*, no. 12-1391, 2012 WL 5332998, at *2-3 (E.D. La. Oct. 26, 2012) (Vance, C.J.) (reviewing this issue).  In *Firmin*, Chief Judge Vance, reviewing Fifth Circuit precedent on this issue and the role of various pre-litigation requirements, noted that "[t]he important difference in function supports an interpretation of the exhaustion requirement as a jurisdictional prerequisite, even though the filing deadline is not."  *Id.* at 3.  This Court agrees with the conclusion of Chief Judge Vance and applies that finding to the present case.

Anticipating the possibility of this conclusion, Defendant further argues in favor of dismissal with prejudice as a renewed charge would be untimely.  Addressing a similar contention in *Capozzelli*, a case cited favorably by Defendant for its determination on the scope of the EEOC charge, that court stated the following in deciding to dismiss the case without prejudice despite the argument that any further action with the EEOC would be untimely:

> Given the absence of direct authority from the Fifth Circuit [on out-of time amendments of an EEOC charge under a particular provision of the Code of Federal Regulations], and the possibility that the EEOC may further process Mr. Capozzelli's charge pursuant to 29 C.F.R. § 1601.28 "to effectuate the purpose of . . . the ADA," this Court is reluctant to hold, as a matter of law, that Plaintiff is forever precluded from asserting the reasonable accommodation claim before the EEOC, or that the defect of

> failure to exhaust cannot be cured in this case. To do so would essentially amount to this Court, and not the EEOC, making a determination that such an amendment would not effectuate the purpose or policy of the ADA. The EEOC is in the best position to make this determination in a fair and reasonable way.

*Capozzelli v. Allstate Insur. Co.*, no. 13-0260, 2014 WL 786426, at *4 (E.D. La. Feb. 24, 2015).

This Court chooses to dismiss this claim without prejudice. Plaintiff may only pursue a claim in this Court again upon final determination of the EEOC as to an amended claim, if such an amendment is permitted by the EEOC.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 22)** filed by Defendant is **GRANTED** insofar as Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

April 16, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE